Case 5:20-cv-00044-MFU-JCH   Document 1   Filed 07/20/20   Page 1 of 15
Pageid#: 1

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
7/20/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Modern Renovations, LLC<br><br>      Plaintiff,<br><br>vs.<br><br>Westcott Exteriors, LLC, Matthew Shane Westcott, and Matthew Westcott, Jr.<br><br>      Defendants. | Civil Action No.: 5:20-cv-00044<br><br>**COMPLAINT** |

Plaintiff Modern Renovations, LLC ("Plaintiff" or "Modern Renovations"), by its undersigned attorneys, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for damages and injunctive and other relief against Defendants Westcott Exteriors, LLC ("Westcott Exteriors"), Matthew Shane Westcott ("Defendant Westcott"), and Matthew Westcott II ("Defendant Westcott II"), including: (1) declaratory relief for breach of confidentiality, non-solicitation, and non-competition provisions of contracts made between Plaintiff and Defendants Westcott and Westcott II; (2) breach of the same contracts; (3) conversion; (4) breach of fiduciary duty; (5) violation of the Virginia Business Conspiracy Act, Va. Code §§ 18.2-499 and -500; (6) misappropriation of Plaintiff's confidential business information in violation of the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 *et seq*.

2. This action arises out of a scheme devised and implemented by Defendants Westcott and Westcott II, while formerly employed by Plaintiff, to convert, conceal, and misappropriate Plaintiff's money, property, and confidential proprietary information, both for their immediate pecuniary benefit and in furtherance of a plan to compete with Plaintiff in the construction and home remodeling industry.

3. Defendants also unlawfully took possession of certain of Plaintiff's trade secrets and confidential proprietary information during the final days of their employment, and are now unfairly competing with Plaintiff through Defendant Westcott Exteriors. Upon information and belief, Defendants are using that stolen information to compete with Plaintiff for its current and prospective customers.

4. Plaintiff is entitled to immediate relief, including a declaratory judgment and injunctive relief, because Defendants' unlawful conduct has caused, and unless enjoined, will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law.

## PARTIES

5. Plaintiff is a West Virginia limited liability company with a principal place of business at 808 N. Queen St, Martinsburg, WV 25404. Plaintiff's equal members, Shawn Wolford and Larry DeMarco II, are each citizens of West Virginia.

6. Defendant Westcott Exteriors is a Virginia limited liability company with a principal place of business at 4 Weems Ln. #333, Winchester, VA, 22601.

7. Defendant Westcott is a citizen of Virginia domiciled at 108 Cheviot Pl., Stephens City, VA 22655. Defendant Westcott is a former employee of Plaintiff and the principal of Westcott Exteriors.

8. Defendant Westcott II, Defendant Westcott's son, is a citizen of Virginia domiciled at 108 Cheviot Pl., Stephens City, VA. Defendant Westcott II is a former employee of Plaintiff and a current employee of Westcott Exteriors.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the claims of this Complaint under 28 U.S.C. §§ 1332, and 2201. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal law claims that they form part of the same case or controversy.

10. This court has personal jurisdiction over Defendant Westcott Exteriors because it is organized and exists under the laws of the state of Virginia, a substantial part of the

events giving rise to the claims in this action occurred in this District, and its principal place of business is located in this District.

11. This court has personal jurisdiction over Defendant Westcott because a substantial part of the events giving rise to the claims in this action occurred in this District and Defendant Westcott resides in this District.

12. This court has personal jurisdiction over Defendant Westcott II because a substantial part of the events giving rise to the claims in this action occurred in this District and Defendant Westcott II resides in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District and the Defendants reside in this District.

**STATEMENT OF FACTS**

14. Plaintiff is a home remodeling, exterior renovation and construction firm based in West Virginia with branches in Virginia, Maryland, and Pennsylvania.  Plaintiff has established a business reputation for honesty, reliability, and high-quality workmanship in this region over many years.

15. Plaintiff's current partners are Shawn Wolford and Larry DeMarco II. Mr. Wolford and Mr. DeMarco each hold an equal partnership interest in the Plaintiff.

16. Plaintiff employs approximately six employees and eight contractors in its four offices.

17. Plaintiff employed Defendant Westcott as a Branch Manager in its Virginia branch office from January, 2018 to March 26, 2020.

18. Plaintiff employed Defendant Westcott II as a salesman in its Virginia branch office from November, 2018 to March 26, 2020.

**Conspiracy to Embezzle Money and Defraud Plaintiff**

19. While Defendants Westcott and Westcott II were initially effective employees, over the course of their employment it became apparent to Plaintiff's managers that they were misappropriating funds from Plaintiff and using Plaintiff's credit accounts for personal expenditures.

20. On or about January, 2018, Defendants Westcott and Westcott II began orchestrating a conspiracy to embezzle money and property from Plaintiff.

21. In particular, Defendants Westcott and Westcott II embezzled money belonging to Plaintiff through a scheme of writing company checks to cash, then cashing those checks and keeping the money obtained for themselves.

22. In one such incident, Defendant Westcott began overseeing the training of Plaintiff's current Pennsylvania branch manager, Donald Masters, in Plaintiff's Virginia office.

23. In September, 2019, Defendant Westcott wrote a $2000 check to Mr. Masters, ordering him to cash the check and bring the money back to the office.

24. After cashing the check, Mr. Masters gave all of the money to Defendant Westcott, who booked the money as petty cash and kept the money for himself.

25. Defendant Westcott wrote numerous other checks from Plaintiff's bank account out to cash and booked them in the same way, despite the fact Plaintiff does not authorize employees to write checks to cash, or keep petty cash on hand.

26. Further, Defendant Westcott wrote numerous checks directly from Plaintiff's bank account to Defendant Westcott II, which he deposited into his personal bank account and directed to his own use.

27. Defendant Westcott also wrote checks from Plaintiff's bank account to his daughter Alexandra Westcott, which she deposited into her personal bank account and directed to her own use.

28. Defendant Westcott also made numerous direct cash withdrawals from Plaintiff's bank account, and directed those funds to his own account.

29. Further, while Defendant Westcott was entitled to use his company American Express card for personal expenditures, he was required to identify such personal expenditures, so that those expenditures could be deducted from his pay.

30. Over the course of his employment, Defendant Westcott incurred a large number of personal expenditures on his company American Express card, which he did not identify to Plaintiff's management nor restore to Plaintiff's account.

31. Defendant Westcott also made numerous personal purchases from Amazon.com using Plaintiff's Amazon.com account, and failed to compensate Plaintiff for those purchases.
32. On two other occasions, Defendant Westcott misrepresented himself to a lender, National Funding, Inc., ("National Funding") in order to obtain loan funds under Plaintiff's name that he could direct to his personal use.
33. Mr. Wolford specifically told Defendant Westcott that he was not authorized to obtain any loan in Plaintiff's name, or to represent himself as authorized by Plaintiff's management to obtain a loan in Plaintiff's name.
34. Nonetheless, in August 2019, Defendant Westcott obtained a $150,000.00 loan from National Funding (the "First Loan") under Plaintiff's name.
35. Defendant Westcott represented himself to National Funding as Mr. Wolford, and forged Mr. Wolford's signature on the loan documents.
36. The First Loan was not reviewed or authorized by Plaintiff's management.
37. Defendant Westcott used the proceeds of the First Loan to restore the amounts he had previously embezzled from Plaintiff in Plaintiff's accounts, so that Plaintiff's management did not immediately notice that money was missing or that the balance of the accounts was unusually low.
38. While the First Loan was apparently fully repaid from Plaintiff's account, by taking the Loan, Defendant Westcott needlessly incurred, and caused Plaintiff to pay over to National Funding, loan interest and fees.
39. On February 24, 2020 Defendant Westcott obtained a second loan in the principal amount of $145,704.57, again under Plaintiff's name (the "Second Loan").
40. Defendant Westcott again misrepresented himself to National Funding as Mr. Wolford.
41. Because Plaintiff was unaware of the Second Loan, it was not repaid, and National Funding subsequently deemed the loan in default.
42. Upon information and belief, Defendants directed the funds obtained under the Second Loan to their personal use.

43. On April 10, 2020, National Funding demanded immediate repayment of the $168,894.48 balance outstanding on the Second Loan, which remains outstanding as of the date of this document.

44. National Funding has sued Plaintiff and Mr. Wolford in the Superior Court of California, County of Orange to collect the Second Loan, requiring Plaintiff to spend time and money defending against that lawsuit.

**Breach of the Confidentiality Agreement**

45. On December 3, 2019, Defendants Westcott and Westcott II each signed an identical "Confidentiality Agreement" (the "Agreements") in which they agreed to keep certain confidential information provided to them by Plaintiff confidential.

46. A copy of the Confidentiality Agreement template substantively identical to the Agreements executed by Defendants Westcott and Westcott II is annexed hereto as Exhibit "A" and incorporated herein as if fully set forth. Exhibit A, Pages 5-6.

47. In addition to those confidentiality obligations, in the Agreements Defendants Westcott and Westcott II each promised not to "solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the current or anticipated business activities of [Plaintiff]," nor to "directly or indirectly, engage or participate in any other business activities which [Plaintiff], in [its] reasonable discretion, determines to be in conflict with the best interests of [Plaintiff]." See Exhibit A, Pages 5-6.

48. Defendants Westcott and Westcott II further agreed not to "divert or attempt to divert from [Plaintiff] any business the [Plaintiff] had enjoyed, solicited, or attempted to solicit, from their customers, prior to termination or expiration" of their employment. See Exhibit A, Pages 5-6.

49. Defendants Westcott and Westcott II also recognized that injunctive relief would be necessary in the event of a breach or threatened breach of the Agreements, and consented to entry to such relief against them. See Exhibit A, Page 8, Sec. 18.

50. The contractual restraints in the Agreements are reasonably necessary to protect Plaintiff's legitimate business interests, including those specified above.

51. On or about March 26, 2020, after they were terminated by Plaintiff, Defendants Westcott and Westcott II entered Plaintiff's Virginia branch office after hours, despite being specifically told they were no longer allowed on Plaintiff's property.

52. Defendants Westcott and Westcott II then improperly and without authorization accessed Plaintiff's computer system and obtained Plaintiff's confidential company password list, which they transferred to their personal media devices.

53. During that intrusion, Defendants Westcott and Westcott II also obtained Plaintiff's confidential customer list, which they transferred to their personal media devices.

54. Defendants Westcott and Westcott II also stole tablet computers belonging to Plaintiff, copies of the Agreements, and check stubs documenting checks they had written from Plaintiff's account for their own benefit, among other documents belonging to Plaintiff.

55. On May 12, 2020, Defendants Westcott and Westcott II formed Defendant Westcott Exteriors as a limited liability company in Virginia.

56. Defendant Westcott Exteriors is doing business and seeking customers in Virginia, West Virginia, Maryland, and Pennsylvania as of the date of this writing.

57. On their website, Westcott Exteriors describes their business as "exterior renovations," particularly "Asphalt Shingles/Standing Seam Metal/Gutters/Fencing/Decking."

58. Westcott Exteriors is therefore in direct competition with Plaintiff in the home remodeling and exterior renovations industry business in Virginia, West Virginia, Maryland and Pennsylvania, in violation of the Agreements.

59. Upon information and belief, Defendants have also used the confidential customer list to solicit Plaintiff's customers for work.

60. Plaintiff has suffered significant losses as a consequence of Defendants' behavior. As of the date of this writing, Plaintiff's total losses are approximately $750,000.00.

**FIRST CAUSE OF ACTION**

DECLARATORY JUDGMENT

*Against Defendants Westcott Exteriors, LLC, Matthew Westcott, and Matthew Westcott II*

61. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62. Plaintiff entered into contracts with Defendants Westcott and Westcott II, namely the Agreements.

63. A judicial determination and declaration is required to declare whether Defendants' work through Westcott Exteriors is a violation of the Agreements and whether the Agreements' restrictive covenant is enforceable.

64. Specifically, a judicial determination and declaration is necessary to declare whether in fact the Agreements prohibit Defendants from operating a competing construction and exterior renovation business, soliciting Plaintiff's former customers, and otherwise engaging in activities prohibited by the Agreements, particularly whether Defendants are "directly or indirectly involved with a business which is in direct competition with the particular business line of…" Plaintiff, and whether Defendants have "divert[ed] or attempt[ed] to divert" from Plaintiff "any business the Employer had enjoyed, solicited, or attempted to solicit…" from customers prior to their termination by Plaintiff.

65. Declaratory relief will clarify the rights and obligations of the parties and is therefore appropriate to resolve part of this controversy.

66. The Federal Declaratory Judgment Act permits this Court to award other relief as necessary after declaring the parties' rights.

67. Pursuant to the Agreements, Plaintiff is entitled to injunctive relief should this Court declare that Defendants' business operations are prohibited by the Agreements. Accordingly, this Court should declare that the Agreements are enforceable, and if the Court finds that Defendants' business operations violate the terms of the Agreements, then the Court should enter an order enjoining Defendants from continuing to operate their business in violation of the Agreements.

68. Further, Defendants' use of Plaintiff's confidential information, in violation of the Agreements, to compete directly with Plaintiff will result in harm that is impossible to measure at this time, making injunctive relief appropriate.

### SECOND CAUSE OF ACTION

BREACH OF CONTRACT

*Against Defendants Matthew Westcott and Matthew Westcott II*

69. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

70. Defendants Westcott and Westcott II each entered into identical confidentiality, non-competition and non-solicitation contracts with Plaintiff, namely the Agreements.

71. Defendants Westcott and Westcott II breached Section 5 of the Agreements by obtaining confidential information from Plaintiff, including but not limited to Plaintiff's customer list, and breaching their promises to "not use the Confidential Information for any purpose that might be "directly or indirectly detrimental to [Plaintiff] or any associated affiliates or subsidiaries"" by using the customer list to compete against Plaintiff in Virginia and West Virginia, Maryland, and Pennsylvania.

72. Further, through Defendant Westcott Exteriors, Defendants Westcott and Westcott II engage in the construction and exterior renovation business, in direct competition with Plaintiff in Virginia and West Virginia, Maryland, and Pennsylvania.

73. Defendants Westcott and Westcott II are therefore in violation of Section 12 of the Agreement, which prohibits them from "be[ing] directly or indirectly involved with a business which is in direct competition with the particular business line of [Plaintiff]."

74. Under Sections 10(a) and 10(b) of the Agreements Defendants Westcott and Westcott II also promised not to "solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the current or anticipated business activities of [Plaintiff]," nor to "directly or indirectly, engage or participate in any other business activities which [Plaintiff], in their reasonable discretion, determines to be in conflict with the best interests of [Plaintiff]."

75. By operating a competing business, namely Defendant Westcott Exteriors, Defendants Westcott and Westcott II have breached, and are continuing to breach, Sections 10(a) and 10(b) of the Agreements.

76. There is no legal justification for Defendants' failure to perform as obligated under the Agreements.

77. Plaintiff has complied with all of its obligations under the Agreements.

78. Plaintiff has suffered damages, including lost business as a consequence of Defendants' breach.

79. Plaintiff is entitled to the entry of injunctive relief prohibiting Defendants Westcott and Westcott II from continuing to violate the Agreements and to recover damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### CONVERSION

*Against Defendants Matthew Westcott and Matthew Westcott II*

80. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

81. As stated above, the Defendants engaged in a pattern of embezzling money from Plaintiff by writing unauthorized checks from Plaintiff's accounts, receiving unauthorized checks from Plaintiff's accounts, withdrawing money from Plaintiff's accounts for their personal use, obtaining loans in Plaintiff's name and using that money for their own purposes, removing tablet computers and confidential information belonging to Plaintiff from Plaintiff's premises and converting that property to their personal use, and making unauthorized personal purchases with employee credit cards provided by Plaintiff.

82. Such money and property properly belonged to Plaintiff. By spending or using such money and property for their personal benefit, each Defendant interfered with Plaintiff's right to that money and property and/or deprived Plaintiff of its right to use that money and property, thus converting the property to their own use.

83. Defendant Westcott's breach caused extensive losses to Plaintiff, namely financial and property losses, in a final amount to be proven at trial.

### FOURTH CAUSE OF ACTION

BREACH OF FIDUCIARY DUTY

*Against Defendant Matthew Westcott*

84. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

85. As Branch Manager of Plaintiff's Virginia office, Defendant Westcott was appointed to act on Plaintiff's behalf as the immediate supervisor of that office.

86. Further, in his position as Branch Manager Defendant Westcott obtained Plaintiff's confidential, proprietary, and competitively sensitive business information, including trade secrets.

87. Defendant Westcott accordingly owed Plaintiff a fiduciary duty in his role as Branch Manager.

88. Defendant Westcott breached that duty by writing unauthorized checks from Plaintiff's accounts, withdrawing money from Plaintiff's accounts for his personal use, obtaining loans in Plaintiff's name and using that money for his own purposes, removing tablet computers and confidential documents belonging to Plaintiff from Plaintiff's premises and converting that property to his personal use, and making unauthorized personal purchases with employee credit cards provided by Plaintiff.

89. Defendant Westcott also breached that duty by disclosing and utilizing, on his own behalf and on behalf of Defendant Westcott Exteriors, the confidential and proprietary information and trade secrets of Plaintiff.

90. Defendant Westcott's breach caused extensive losses to Plaintiff, namely financial and property losses, in a final amount to be proven at trial.

### FIFTH CAUSE OF ACTION

VIOLATION OF THE VIRGINIA BUSINESS CONSPIRACY ACT

*Against Defendants Matthew Westcott and Matthew Westcott II*

91. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

92. As described above, Defendants Matthew Westcott and Matthew Westcott II combined in a conspiracy to deprive Plaintiff of money and property by purposefully embezzling money from Plaintiff's accounts, fraudulently obtaining loans using Plaintiff's name, misappropriating Plaintiff's trade secrets and confidential information, and stealing tablet computers and confidential documents belonging to Plaintiff from Plaintiff's Virginia branch office.

93. The extent and nature of the Defendants' conduct demonstrates purposeful action and that such behavior was performed willfully by Defendants.

94. Defendants damaged Plaintiff by depriving Plaintiff of money and property properly belonging to Plaintiff. Plaintiff suffered extensive financial and property losses, in a final amount to be proven at trial.

### SIXTH CAUSE OF ACTION

VIOLATION OF THE VIRGINIA UNIFORM TRADE SECRETS ACT

*Against Defendants Westcott Exteriors, Westcott and Westcott II*

95. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

96. Plaintiff is the owner of trade secrets subject to statutory trade secret protection under the law of Virginia, including but not limited to information relating to its pricing, its customers and customer relationships, its working methods, and its marketing and business strategies.

97. Plaintiff invested significant time and money to create this proprietary information, which has independent economic value and provides a demonstrable competitive advantage to Plaintiff.

98. Plaintiff has at all times engaged in reasonable efforts to maintain the secrecy of such information, including requiring confidentiality agreements like the Agreements signed by Defendants Westcott and Westcott II.

99. Plaintiff's trade secrets derive independent commercial value in not being generally known or readily ascertainable by Plaintiff's competitors.

Complaint

100. During their employment, Defendants obtained extensive knowledge of Plaintiff's confidential and proprietary operations, customers, processes, practices, and trade secrets.

101. Plaintiff provided Defendants with this confidential and proprietary information subject to the parties' express and implied understanding that the information was not in the public domain and that its secrecy would be maintained.

102. Defendants also improperly obtained confidential and proprietary information after their termination by entering Plaintiff's Virginia office and accessing Plaintiff's computer system without authorization, as detailed above.

103. Defendants Westcott and Westcott II have engaged in the unauthorized retention and use of Plaintiff's proprietary information to compete with Plaintiff in business through Defendant Westcott Exteriors, including misappropriating Plaintiff's customer list, as detailed above, such that Defendants have misappropriated and continues to misappropriate Plaintiff's confidential information and trade secrets in violation of the parties' understanding.

104. Defendants' misappropriation of confidential information and trade secrets is a violation of Virginia's Uniform Trade Secrets Act, Va. Code § 59.1-336. Under the Act, Plaintiff is entitled to an injunction prohibiting Defendants from disclosing, misappropriating or using Plaintiff's trade secrets, and requiring Defendants to correct the consequences of any wrongful disclosure, misappropriation, and use of Plaintiff's trade secrets.

105. Defendants' misappropriation has therefore directly caused and continues to cause Plaintiff to suffer irreparable and significant economic harm.

106. Plaintiff is entitled to recover all damages caused by Defendants' misappropriation, use, and/or disclosure of Plaintiff's trade secrets.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff respectfully requests judgment as follows:

A. A declaratory judgment under 28 U.S.C. § 2201 determining and declaring that Defendants' conduct violates the terms of the Agreements and that the Agreements are enforceable;

B. An order barring from Defendants from:

    a. Competing with and diverting business from Plaintiff in Virginia, West Virginia, Pennsylvania or Maryland until January 1, 2022;

    b. Violating their Agreements with Plaintiff including enjoining them from soliciting Plaintiff's employees and contractors in Virginia, West Virginia, Pennsylvania or Maryland until January 1, 2022;

    c. Disclosing, disseminating, using, conveying or in any way utilizing or transferring the confidential information or trade secrets of Plaintiff; and

    d. Requiring Defendants to immediately return all of Plaintiff's property in their possession or control;

C. Compensatory damages suffered by Plaintiff and unjust enrichment gained by Defendants in an amount to be determined by a trial in this matter, upon information and belief, in an amount in excess of $750,000;

D. Punitive damages in an amount to be determined by a trial in this matter;

E. Treble damages pursuant to the Virginia Business Conspiracy Act;

F. Prejudgment and post-judgment interest; and

G. Costs and attorneys' fees;

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all triable issues.

[Signature Page Follows]

DATED: July 20, 2020        /s/ Carly Mee

|   |
|---|
| Carly Mee, Esq. |
| VA Bar #90912 |
| 25780 Racing Sun Drive |
| Aldie, VA 20105 |
| 805-231-9284 |
| mee.carly@gmail.com |

- 15 -
Complaint