UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MODERN RENOVATIONS, LLC,  )<br>    Plaintiff,                              )<br>                                             )<br>v.                                          )<br>                                           )<br>MATTHEW WESCOTT, SR.,       )<br>    Defendant.                         )  | Civil Action No.: 5:20-cv-00044<br><br>By:   Michael F. Urbanski<br>Chief United States District Judge |

### MEMORANDUM OPINION

This matter comes before the court on a motion for partial summary judgment by the defendants Wescott Exteriors, LLC; Matthew Wescott, Sr. ("Matthew Wescott"); and Matthew Shane Wescott, Jr. ("Shane Wescott"). ECF No. 51. Plaintiff Modern Renovations, LLC, responded in opposition, ECF No. 65, and the court held a hearing on October 12, 2021. This motion for partial summary judgment concerns Shane Wescott and the two counts remaining against him—Count Three alleging conversion and Count Five alleging a violation of the Virginia Business Conspiracy statute, Va. Code §18.2-499 and 500. The court has reviewed the pleadings, the briefs filed on the motions and the exhibits appended thereto, and each reference to Shane Wescott in the depositions taken in this case. On this record, there is no basis on which a reasonable jury could return a verdict in favor of plaintiff against Shane Wescott on either Count Three or Count Five. Accordingly, Shane Wescott's motion for partial summary judgment will be **GRANTED** as to the claims against him alleged in Counts Three and Five. As Count Five alleges a conspiracy only between Shane Wescott and his father, Matthew Wescott, Sr., that count will be **DISMISSED** in its entirety. The case will proceed to trial against Matthew Wescott, Sr. on Counts Three and Four.

I.

Count Three of Modern Renovations' complaint alleges conversion against Matthew Wescott and Shane Wescott. Count Five alleges a violation of the Virginia business conspiracy statute, Va. Code §§18.2-499 and 500, against Matthew Wescott and Shane Wescott. As regards Count Three, alleging conversion, Shane Wescott argued on brief that summary judgment should be granted for him as there was no evidence that he wrongfully exercised control over any Modern Renovations account. As to Count Five, breach of the business conspiracy statute, Shane Wescott argued that there was no evidence that he acted with legal malice. Modern Renovations' arguments in opposition to Shane Wescott's motion for partial summary judgment were sparse. As to Count Three alleging conversion, Modern Renovations argues that money can be the subject of conversion and that the complaint alleges "that Shane converted tangible personal items beyond money including tablet computers, confidential documents, and other personal property, and MR has adduced evidence to that effect in the deposition testimony of MR's principal." Opposition Brief, ECF No. 65, at 5. As to business conspiracy, Modern Renovations argues that it has met the legal malice element based on the actions of Matthew Wescott, and that "[m]oreover, MR has adduced evidence that Shane intentionally and without justification accepted funds taken from MR by Wescott Sr." Id. at 6. At the October 12, 2021 hearing, the court took Shane Wescott's motion for summary judgment as to Counts Three and Five under advisement pending review of the deposition transcripts.

## II.

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover,

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III.

Count Three alleges conversion against Shane Wescott and his father, Matthew Wescott. Conversion is "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956). As against Shane Wescott, the complaint alleges that he engaged in conversion by "receiving unauthorized checks from Plaintiff's accounts," and by "removing tablet computers and confidential information belonging to Plaintiff from Plaintiff's premises and converting that property to their personal use." Compl.,

4

ECF No. 1 at ¶ 81. There is no evidence from which a reasonable jury could conclude by preponderance of the evidence that Shane Wescott engaged in conversion. In fact, review of the deposition testimony taken in this case reveals that Modern Renovations' claims against Shane Wescott are entirely speculative.

Apart from the speculation of Modern Renovations principal Shawn Wolford, there is no evidence that Shane Wescott wrongfully obtained any monies or property of Modern Renovations. As regards check and monies Shane Wescott received, Modern Renovations asserts that while he worked there, Shane Wescott received payments from Modern Renovations for commissions and reimbursements in the total amount of $25,908.65. Shane Wescott Dep., ECF No. 71, at 47.[1] At the same time, however, the record establishes that during the period these payments were made, Shane Wescott worked as a salesperson for Modern Renovations. Shane Wescott worked for Modern Renovations from late 2018 to March 2020. During that period, Shane Wescott received checks and other electronic payments from his father, Matthew Wescott, Sr., who ran the Modern Renovations Winchester, Virginia office. Shane Wescott did not view any of these payments as unauthorized as he viewed his father as a partner in Modern Renovations with Shawn Wolford and Larry DeMarco. Shane Wescott testified that "[m]y father was the company. He was a partner in it, had the authority to reimburse and compensate the employees under his purview as he felt appropriate. And so, I never questioned it beyond that. I was getting paid for work

---

[1] While Shane Wescott was unable to confirm this figure, id. at 47, Modern Renovations does not argue that this figure was so large as to evidence embezzlement. Nor could it as Modern Renovations' expert accountant states that net sales from the Winchester branch of Modern Renovations between February 2018 and March 2020 was $5,438,675.80. Expert Report of Matthew Reidenbach, Ph.D., ECF No. 90-10, at 6.

5

and services performed." Shane Wescott Dep. at 64. Shane Wescott testified that he received commission checks to supplement his salary, and got reimbursed for fuel, training new employees and "things like that," for which he was required to submit receipts. Id. at 34. Shane Wescott testified that he had no role in writing Modern Renovations checks or making its payments. Id. at 39, 52. Rather, he "simply was happy to receive compensation for expenses I had already incurred." Id. at 63–64. Shane Wescott testified that "I performed work services, and these checks were written as compensation for those work responsibilities." Id. at 38. Shane Wescott had no knowledge of Modern Renovations payments to others, testifying that "I just wanted to sell roofs and get paid, so I didn't pay much mind." Id. at 90. Other than cashing or depositing Modern Renovations commission or reimbursement checks payable to him, his only role in the Modern Renovations payment process was to occasionally deliver Modern Renovations checks to roofing contractors when the Modern Renovations partners were absent. Id. at 42. When questioned at deposition about the reason certain checks were written to him, Shane Wescott was unable to provide specifics other than to say "[i]t represents work responsibilities completed and then compensation for those work responsibilities." Id. at 46.

Modern Renovations offered no evidence that the payments to Shane Wescott were wrongful or unauthorized. While Modern Renovations principal Shawn Wolford questioned the payments made to Shane Wescott by his father because of their father and son relationship,

he had no evidence that Shane Wescott had knowledge of any unauthorized payments made by his father. Shawn Wolford Dep., ECF No. 100, at 161.[2] Shawn Wolford testified as follows:

> Q. Do you believe that Shane Wescott had knowledge of his father's use of Modern Renovations' funds while he was at Modern Renovations?
>
> A. I do.
>
> Q. What makes you believe that?
>
> A. I mean, they are father and son. They worked hand in hand.
>
> Q. Other than their relationship as father and son, is there any –
>
> A. There's cash out transfers.
>
> Q. So the fact that –
>
> A. Questionable payments.
>
> Q. – Shane Wescott received money as directed by Matthew Wescott is another reason that you believe Shane Wescott had knowledge?
>
> A. Correct.
>
> Q. Anything else?
>
> A. Not that I can think of right now.

Id. When Shawn Wolford first became aware that questionable payments were being made out of the Winchester office, he suspected Shane Wescott was the culprit and brought the issue to the attention of Matthew Wescott, Sr. Id. at 69. After first telling Wolford that he would look into it, an emotional Matthew Wescott, Sr. confessed a day or so later to forging

---

[2] With the exception of Shane Wescott's deposition, which was docketed in case no. 5:20cv0044, all of the other depositions taken in this case were docketed in the companion case, National Funding, Inc. v. Modern Renovations, LLC, and Shawn Lee Wolford, No. 5:20cv0058, and may be found there.

7

the checks, blaming the circumstances on his divorce. Id. at 70-72. Other than Shawn Wolford's speculation, there is no evidence in this record that Shane Wescott was involved in his father's malfeasance.

While Shawn Wolford was suspicious of Shane Wescott, Larry DeMarco, II, the other Modern Renovations principal, was not. Demarco testified at deposition:

> Q. So you still, at this point, don't think that Shane did anything wrong while he was at Modern Renovations?
>
> A. I don't believe that Shane would do anything like that. I've known Shane since he was five years old. He's never given me a reason to think that he would be deceitful or unethical, so I have no reason to think otherwise.
>
> Q. Do you have any reason to believe that he had any idea what Matthew Wescott was doing?
>
> A. I don't.
>
> Q. Do you have any reason to believe that Shane knowingly took money from Modern Renovations?
>
> A. I don't personally, no.

Demarco Dep., ECF No. 99, at 123. In fact, Demarco was willing to keep Shane Wescott on at Modern Renovations after his father was terminated, testifying that "I really felt Shane probably didn't have much to do with this. Maybe he got some gas or cigarettes out of the deal, but he wasn't running around trying to plot how to make money that he didn't earn." Id. at 122. At the end of the day, DeMarco told Shane Wescott that it probably would not be a good idea if he stayed on because he "was going to be around people that were not going to have the best things to say about his dad." Id. at 121–122. In short, Modern Renovations

offers nothing other than speculation to suggest that Shane Wescott was involved in any wrongful conduct undertaken by his father.

Nor is there any evidence to support Modern Renovations' speculative assertion that Shane Wescott took any tangible personal property from Modern Renovations when he stopped working there. In support of this claim, Modern Renovations offers only the ambiguous declaration of Shawn Wolford, which states, "[s]hortly after Westcott Sr.'s termination, Wescott Sr. and Shane came back to the MR Virginia office late at night and stole a MR laptop and iPad, as well as MR customer lists, password lists, and project schedules." Wolford Decl. ECF No. 65-3, ¶ 32. In contrast to his ambiguously worded declaration, Wolford does not testify in his deposition that Shane Wescott took any personal property of Modern Renovations. Moreover, Shane Wescott was questioned extensively at his deposition about his visit to the Modern Renovations' office on the evening he decided to seek employment elsewhere. Shane Wescott Dep., ECF No. 71, at 98–103. Nothing in this testimony supports the speculative assertion that Shane Wescott took any personal property belonging to Modern Renovations. In fact, Shane Wescott testified that he went back to the Winchester office "to return company equipment." Id. at 98. Again, this sworn testimony was not contradicted by anything in Shawn Wolford's deposition. Importantly, the testimony of Modern Renovation's other principal, Larry DeMarco II, does not support any claims against Shane Wescott. As such, there is no basis from which a reasonable jury could return a verdict for Modern Renovations against Shane Wescott on the claim of conversion of personal property.

**IV.**

9

Count Five alleges a violation of the Virginia Business Conspiracy Act, Va. Code §§ 18.2-499 and 500, alleging conspiracy to engage in the conversion alleged in Count Three. Virginia Code § 18.2-500(A) states that "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of [Code] § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel." Code § 18.2-499(A) imposes criminal liability on

> [a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.

"To recover in an action under these statutes, a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff.'" Dunlap v. Cottman Transmission Systems, LLC, 287 Va. 207, 214, 754 S.E.2d 313, 317 (2014)(quoting Allen Realty Corp. v. Holbert, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984)). Furthermore, such action will only lie if plaintiff sustains damages as a result of an underlying unlawful act. Dunlap, 287 Va. at 215–16, 754 S.E.2d at 317.

The element of legal malice required to establish a violation of this statute requires proof that defendants acted "intentionally, purposefully, and without legal justification." Commercial Business Systems, Inc. v. Bellsouth Services, Inc., 249 Va. 39, 47, 453 S.E.2d 261, 267 (1995). Such proof must be adduced by clear and convincing evidence. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 108 F. 3d 522, 526 (4th Cir.

1997)(citing Tazewell Oil Co., Inc. v. United Va. Bank, 249 Va. 94, 109, 413 S.E. 2d 611, 691(1995)). Modern Renovations has no evidence that Shane Wescott agreed with his father to injure Modern Renovations' business, much less clear and convincing evidence. At most, Modern Renovations can prove that Shane Wescott worked as a salesperson for Modern Renovations, was paid sales commission and expense reimbursements, and left its employ after his father was terminated. While Modern Renovations speculates that an unlawful agreement existed between Shane Wescott and his father, it has no evidence to support its speculation. Modern Renovations has not produced clear and convincing evidence from which a reasonable jury could conclude that Shane Wescott conspired with his father to injure Modern Renovations. Because the only conspirators alleged in Count Five are Shane Wescott and his father, this count will be dismissed in its entirety.

        An appropriate Order will be entered.

Entered:  October 22, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.10.22 13:08:37
-04'00'

Michael F. Urbanski
Chief United States District Judge