IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MODERN RENOVATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 5:20-cv-044 |
| v. ) | |
| ) | |
| MATTHEW SHANE WESTCOTT, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |
| ) | |
| NATIONAL FUNDING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 5:20-cv-058 |
| v. ) | |
| ) | |
| MODERN RENOVATIONS, LLC, et ) | |
| al., ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| Defendants. ) | |

### ORDER

This matter is before the court following a jury verdict reached in these actions following a five-day trial.

### I.

The court held a jury trial in these actions from February 27, 2024, to March 4, 2024. On the fourth day of trial, after plaintiff Modern Renovations, LLC rested its case-in-chief, defendant Matthew Shane Westcott made an oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. Mr. Westcott argued that Modern Renovations failed to offer sufficient evidence upon which a jury could return a verdict against him because,

1

in particular, Modern Renovations did not provide evidence to support its key damages exhibit—a spreadsheet that Shawn Wolford, a principal of Modern Renovations, testified that he put together based on his own judgment of which of Mr. Westcott's credit card charges, cash withdrawals, and checks were for personal expenses and which were for legitimate business expenses. The court sent the jury home and held a hearing on the motion that lasted over two hours.

During the hearing, the court informed counsel for Modern Renovations that it had serious concerns regarding the level of speculation that would be required for the jury to calculate damages for it, in light of the evidence presented during Modern Renovations' case-in-chief. For example, while it was plainly possible for the jury to find that a check written to Mr. Westcott's wife's salon business was an improper personal expense, the court asked counsel for Modern Renovations to explain how the jury could conclude that Mr. Westcott owed Modern Renovations in damages for checks that he had written to Franklin Cabrera, a roofing subcontractor for Modern Renovations for which no evidence had been introduced to suggest that Mr. Cabrera was or was not owed that money as part of his work for Modern Renovations. Similarly, while Mr. Westcott's charges to his American Express business card at a Louis Vuitton store was likely a personal expense, the court queried how a jury could determine that Mr. Westcott's many charges to Amazon were business or personal expenses, given that Modern Renovations provided no evidence regarding items purchased (e.g., office supplies versus personal care products).

The court also cautioned the parties that the only plaintiff in the case against Mr. Westcott was Modern Renovations, LLC, and, accordingly, Modern Renovations could only

seek damages that it, as the LLC, incurred. In contrast, Modern Renovations lacks standing to request any alleged damages that the LLC members—Mr. Wolford and Mr. Larry DeMarco—accrued in their individual capacity through their alleged oral profit-sharing agreement they had with Mr. Westcott. The court took the Rule 50 motion under advisement over the weekend and informed the parties it would provide its ruling the following Monday morning.

Over the weekend, however, counsel for Modern Renovations submitted a letter to the court, explaining that it revised its claim for damages significantly, thereby reducing its total damages sought to $179,207.07. When court was back in session on Monday morning, the court explained that it had three major concerns regarding Modern Renovations' case for damages, but that Modern Renovations' revised damages claim resolved two of them.

First, the court determined that the revised damages claim properly omitted damages to Mr. Wolford and Mr. DeMarco arising from the oral profit-sharing agreement with Mr. Westcott because Mr. Wolford and Mr. DeMarco are not plaintiffs in the action. Second, the court reasoned that the revised damages claim avoided a failure of proof issue that Modern Renovations would have otherwise faced—that Modern Renovations failed to show, for Mr. Westcott's expenses that it was able to show were personal, that Mr. Westcott never reimbursed Modern Renovations for them (i.e., that Modern Renovations was still owed those funds). Because the revised damages claim sought to establish that Mr. Westcott overpaid himself by charging the company for personal expenses in excess of the amount he earned under the profit-sharing agreement, Modern Renovations no longer needed to establish that specific charges were not reimbursed, thereby avoiding the failure of proof.

Finally, however, the court concluded that a significant issue remained—that the lack of evidence regarding which of Mr. Westcott's credit card charges, cash withdrawals, and checks were for personal expenses and which were for legitimate business expenses would require the jury to engage in impermissible speculation as to Modern Renovations' damages. For example, the exhibit appended to Modern Renovations' damages letter indicated it was seeking $119,365.10 in damages from Mr. Westcott's American Express credit card purchases. Exhibit 188, the spreadsheet on which the jury would need to rely as key evidence for determining the damages for the credit card purchases, listed 866 charges totaling $227,634.72. This meant that Modern Renovations was seeking damages for only an undetermined portion of those 866 charges, yet Modern Renovations offered no evidence as to which those were.[1] The court determined, therefore, that it would not allow these damages to go to the jury without further evidence to substantiate them, and informed counsel for Modern Renovations that the court would allow it "to put on evidence of damages consistent with its new calculation."[2]

Thereafter, Mr. Westcott rested his case without putting on any evidence of his own, and counsel for National Funding called one witness in its case-in-chief. Modern Renovations then declined to put on a rebuttal case, offering no additional evidence to support its new

---

[1] The court noted for the parties that the jury could plainly conclude that certain charges were for personal use (e.g., purchases made at Louis Vuitton, Beach Bum Tanning, Body Renew, the ABC Store, and the VIP Gentleman's Club), but that the jury had no way beyond guesswork to determine the total number of charges that added up to Modern Renovations' total requested damages of $119,365.10.

[2] The court specifically instructed, "I'm going to allow the plaintiff to put on evidence of damages consistent with its new calculation provided -- because it takes care of my standing Article III issue, takes care of my failure of proof not reimbursed issue, but what it doesn't do entirely is take care of the speculative nature of the damages. So I think in order for you to ask the jury for that, you've got to drill down on the exact numbers. We can't have the jury looking at 800 line items in American Express and guessing which ones are personal and which ones are not."

4

damages calculation. After all parties rested, Mr. Cohen, counsel for Modern Renovations, informed the court that, "in light of the Court's instruction with regard to speculation and to get to the heart of the issue in this case, which I think we all agree on, we are opting to instruct the jury simply with regard to the responsibility of the National Funding loan." Mr. Cohen again confirmed, at the court's prompting, that the "only issue [for damages] is going to be as to the National Funding loan." The court then stated, and Mr. Cohen again confirmed, that Modern Renovations has "determined they are not going to present any evidence that [Mr. Westcott] owe[s] them any monies other than monies associated with the National Funding loan," and that, while the evidence regarding Mr. Westcott's alleged personal expenses is still evidence in the case, Modern Renovations is "not seeking damages associated with it." By way of clarification for Mr. Westcott, the court again explained, "It started off at [$1.5 million] and [Modern Renovations was] after you for all this other stuff. Now the only issue that is to be decided is . . . who's responsible for the National Funding loan and whether you should pay it, whether Modern Renovations should pay it, or whether National Funding has to eat it. That's the issue for the jury."

In its closing argument, Modern Renovations informed the jury that it was only seeking recovery for the damages associated with the loan, with Mr. Cohen stating, "Ladies and gentlemen, we ask you to rule on one thing: Set things right and have Mr. Westcott, the borrower, repay National Funding the lender for this February loan." He again asserted, "Mr. Westcott must repay that loan that he borrowed from National Funding. You can find that Mr. Westcott entered into this loan with National Funding and he has the sole obligation to repay that loan." Consistent with Modern Renovations' earlier statements, Mr. Cohen made

5

no request to the jury for damages associated with any of Mr. Westcott's alleged personal spending. National Funding, for its part, asked the jury to return a verdict of $168,894.48 for damages arising from the loans.

After the court discharged the jury to begin its deliberations, the court explained to the parties that, consistent with Modern Renovations' limiting of its request for damages to the loans, it was clear that, if the jury were to come back with a verdict for damages in excess of $168,894.48 (the total alleged damages arising from the National Funding loans), the court must reduce the verdict to that amount as a matter of law.

Later that evening, the jury returned its verdict. The jury awarded a total of $445,592.72 to Modern Renovations for its claims of conversion and breach of fiduciary duty against Mr. Westcott; $71,762.52 to National Funding for unjust enrichment against Modern Renovations; and a total of $102,367.52 to Modern Renovations for its crossclaims for breach of fiduciary duty and fraud against Mr. Westcott. The jury also awarded prejudgment interest to Modern Renovations for the damages on the conversion claim.

Given the court's ruling as a matter of law that Modern Renovations' evidence on certain damages would require the jury to engage in improper speculation and Modern Renovations' subsequent decision to only request damages arising from the National Funding loans, the court must now determine the issue of remittitur.

## II.

Remittitur is a well-settled process by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award. Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996). The Fourth Circuit instructs that, "if a

court finds that a jury award is excessive, it is the court's duty to require a remittitur or order a new trial." Id. (citing Linn v. United Plant Guard Workers, Local 114, 383 U.S. 53, 65–66, (1966)). Further, jury determinations on factual issues such as the amount of compensatory damages must be set aside if the "verdict is against the weight of the evidence or based on evidence which is false." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998) (quoting Atlas Food Sys. & Servs., Inc., 99 F.3d at 594).

Here, counsel for Modern Renovations informed the jury that it was only seeking damages arising from the National Funding loans, which, as National Funding argued, totaled $168,894.48. The jury, however, failed to follow this instruction, granting a total award to Modern Renovations of $547,960.24— more than triple the maximum amount of damages that could be attributed to the loans. As such, the jury's damages award goes against the clear weight of the evidence and against Modern Renovations' damages request in its closing argument.

However, the jury did reach a determination on the amount of damages arising under the loan, through its award of damages to National Funding against Modern Renovations for unjust enrichment. For that claim, the jury determined that Modern Renovations owed National Funding compensatory damages of $71,762.52 (the total funds that Modern Renovations received from the National Funding loans, less the amount that Modern Renovations returned to National Funding). Accordingly, the court concludes that the jury

7

verdict against Mr. Westcott must be reduced to the jury's determination regarding the damages arising from the loan, $71,762.52.[3]

### III.

For the reasons set forth above, it is hereby **ORDERED** and **ADJUDGED** that plaintiff National Funding, Inc. is awarded a total sum of **$71,762.52** in damages against Modern Renovations, LLC, and crossclaim plaintiff Modern Renovations, LLC is awarded a total sum of **$71,762.52** in damages against crossclaim defendant Matthew Shane Westcott.

It is further **ORDERED** that these actions are stricken from the active docket of the court. As the court indicated to the parties after the jury returned its verdict, the parties may file timely post-judgment motions under Federal Rules of Civil Procedure 50 and 59 as they so wish.

It is **SO ORDERED**.

Entered: March 5, 2024

Michael F. Urbanski
Chief United States District Judge

---

[3] The court notes that it previously informed the parties that it would reduce a jury verdict in excess of $168,894.48, the amount that National Funding was seeking for damages arising from the loans. However, because the jury determined that the damages from the loans totaled $71,762.52, the court reduces the award against Mr. Westcott to Modern Renovations to that figure.